# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| In Re: <br><br> **EXTRUSION GROUP, LLC**, *et al.*,[1] <br><br> Debtors. | CASE NO. 21-21053-JRS <br><br> CHAPTER 11 <br><br> Jointly Administered |
| **EXTRUSION GROUP, LLC; EXTRUSION GROUP SERVICES, LLC; EG GLOBAL, LLC; EG VENTURES, LLC; MICHEAL HOUSTON; and MICHAEL COOK,** <br><br> Plaintiffs, <br><br> v. <br><br> **KIMBERLY-CLARK CORPORATION; and KIMBERLY-CLARK GLOBAL SALES, LLC,** <br><br> Defendants. | ADVERSARY PROCEEDING NO. _____ |

## ADVERSARY COMPLAINT

Extrusion Group, LLC; Extrusion Group Services, LLC; EG Global, LLC; EG Ventures, LLC (collectively, the "**Debtors**"); Micheal Houston; and Michael Cook (collectively with the Debtors, the "**Extrusion Parties**"") file this adversary proceeding against Defendants Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (the "**KC Parties**") seeking injunctive relief pursuant to 11 U.S.C. §§ 105 and 362 to stay or enjoin the continued prosecution of a lawsuit

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

1

that the KC Parties have brought against the Debtors and their members and owners Mr. Micheal Houston and Mr. Michael Cook.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. This adversary proceeding is commenced pursuant to Rule 7001(7) of the Federal Rules of Bankruptcy Procedure.

3. The Debtors seek relief under §§ 105 and 362 of the Bankruptcy Code.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under Title 11 which is pending this district.

5. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## THE PARTIES

6. Plaintiff Extrusion Group, LLC is a domestic limited liability company organized under the laws of the State of Georgia, with its company headquarters located at 1425 Market Blvd., Ste 530-123, Roswell, Georgia 30076. Micheal Houston is the registered agent of Extrusion Group, LLC.

7. Plaintiff Extrusion Group Services LLC is a domestic limited liability company organized under the laws of the State of Georgia, with its company headquarters located at 1425 Market Blvd., Ste 530-142, Roswell, Georgia 30076. Micheal Houston is the registered agent of Extrusion Group Services, LLC.

8. Plaintiff EG Global, LLC is a domestic limited liability company duly organized under the laws of the State of Georgia, with its company headquarters located at 1425 Market

2

Blvd., Ste 530-123, Roswell, Georgia 30076. Micheal Houston is the registered agent of EG Global, LLC.

9. Plaintiff EG Ventures, LLC is a domestic limited liability company duly organized under the laws of the State of Georgia, with its company headquarters located at 1425 Market Blvd., Ste 530-123, Roswell, Georgia 30076. Micheal Houston is the registered agent of EG Ventures, LLC.

10. Plaintiff Michael Houston is an individual and the managing member for each of the Debtors, who currently resides at or near 18 E Bradley St, Lot 15, Miramar Beach, FL 32550.

11. Plaintiff Michael Cook an individual and the lead engineer for the Debtors, who currently resides at or near 830 Mitsy Ridge Dr., Marietta, Georgia.

12. Defendant Kimberly-Clark Global Sales, LLC is a Wisconsin corporation having its principal place of business at 401 North Lake Street, Neenah, Wisconsin 54956. C T Corporation System is the registered agent of Kimberly-Clark Global Sales, LLC and can be served at 289 S Culver St, Lawrenceville, Georgia 30046.

13. Defendant Kimberly-Clark Corporation ("**Kimberly-Clark**") is a Delaware corporation with a principal place of business at 351 Phelps Drive, Irving, Texas 75038. Kimberly-Clark Corporation has operations in the State of Georgia, including in Roswell, LaGrange, McDonough, Alpharetta, and Atlanta. C T Corporation System is the registered agent of Kimberly-Clark Corporation and can be served at 289 S Culver St, Lawrenceville, Georgia 30046.

## BACKGROUND

14. On October 5, 2021 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "**Bankruptcy Cases**").

15. Mr. Houston and Mr. Cook are former employees of the KC Parties. Mr. Cook and Mr. Houston left their positions with the KC Parties at various points between 2006 and 2009.

16. In 2011–2012, Mr. Houston, Mr. Cook, Kurtis Brown, and William Edwin Littion II formed EG Global, LLC ("**EG Global**") and Extrusion Group, LLC ("**Extrusion Group**").

17. They then formed EG Ventures, LLC ("**EG Ventures**") the following year.

18. EG Global is a holding company owned by the Debtors' principals, which in turn owns 100% of the membership interests in Extrusion Group and EG Ventures.

19. In 2016, Mr. Houston, Mr. Cook, and Kurtis Brown formed Extrusion Group Services LLC ("**Extrusion Group Services**") to provide ancillary services related to the equipment that Extrusion Group sells.

20. The Debtors operate as industrial machinery manufacturing and consulting companies. Based on their many years of engineering experience, the Debtors' main principals, Mr. Houston and Mr. Cook, have the knowledge and ability to design and oversee the manufacture of massive industrial machines that produce non-woven fabric and plastic materials used in products such as wet wipes, diapers, face masks, and more.

21. Micheal Houston is the managing member and acting Chief Executive Officer for each of the Debtors. He is also the acting Chairman of the Board for each of the Debtors. Mr. Houston sets the vision, objectives and goals of the Debtors. He is also the face to the customers for the equipment sales functions. He oversees accounting, purchasing, operations, and legal activities for all the Debtors.

22. Additionally, Mr. Houston is the primary person who is managing and directing these Bankruptcy Cases. He is responsible for the Debtors' administrative duties. More importantly, he is the person who will formulate the Debtors' reorganization plans and implement

them. Without Mr. Houston's involvement, the Debtors could not reorganize. His involvement is vital to the reorganization effort.

23. Michael Cook is the chief engineer for the Debtors. As the chief engineer, he oversees development and design of all the Debtors' proprietary technology. His design efforts enhance the Debtors' intellectual property estate, which is a primary driver of value for the Debtors. Without Mr. Cook, the Debtors' most significant source of revenue would be severely impacted.

24. The KC Parties constitute one of the country's largest manufacturers of personal and professional care products with net sales last quarter exceeding $4.7 billion. Kimberly-Clark's operating segments include personal care (e.g., diapers, baby wipes, and feminine products), consumer tissues (e.g., facial and bathroom tissues, paper towels, and napkins), and professional commercial products of similar nature sold under well-known brands, including Huggies®, Kleenex®, Scott®, Cottonelle®, and Kotex®, among others. They employ more than 42,000 individuals worldwide and distributes their products to more than 175 countries.

## THE DISTRICT COURT CASE

25. On October 15, 2018, the KC Parties filed a complaint (the "**Complaint**") against the Extrusion Parties in the United States District Court for the Northern District of Georgia styled: *Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC v. Extrusion Group, LLC; Extrusion Group Services, LLC; EG Global, LLC; EG Ventures, LLC; Micheal Houston; and Michael Cook*, Case No. 1:18-cv-04754-SDG, U.S. District Court for the Northern District of Georgia (the "**District Court Case**").

26. In the Complaint, the KC Parties asserted claims against the Extrusion Parties accusing them of intellectual property infringement and a slew of other purported harms in an

5

attempt to stifle market competition from the Debtors

27. Despite having knowledge of the Debtors operations for years, the KC Parties tried and failed twice to obtain early injunctive relief and shut down the Debtors.

28. After discovering their initial theories were meritless, the KC Parties significantly revised their claims by filing their First Amended Complaint (the "**Amended Complaint**") on November 20, 2019 (the "**New Claims**"). [Dist. Ct. Doc.156, 168, 184.].

29. The New Claims include a count for trade secret misappropriation under the Defend Trade Secrets Act against all of the Extrusion Parties, a count for trade secret misappropriation under the Georgia Trade Secrets Act against all of the Extrusion Parties, a count for patent infringement against Extrusion Group, a count for breach of contract against Mr. Houston, and a count for breach of contract against Mr. Cook.

30. After years of bankrolling the extensive litigation against the KC Parties, the Debtors' cash reserves dwindled, in no small part due to the existential threat posed by the KC Parties' litigiousness.

31. As a result, the Extrusion Parties' counsel, Barnes and Thornburg LLP, in the District Court Case filed a motion to withdraw as counsel and the District Court granted the motion on September 15, 2021 [Dist. Ct. Doc. 390], leaving the Extrusion Parties as *pro se* litigants.

32. Aside from their lack of counsel in a complicated intellectual property lawsuit, the Extrusion Parties were barred from viewing significant portions of the documents produced by the KC Parties as a result of a Protective Order [Dist. Ct. Doc. 83] entered by the District Court limiting said documents to "attorneys' eyes only."

33. Without counsel and the ability to afford any, the Debtors were forced to file voluntary petitions for chapter 11 bankruptcy on October 5, 2021.

34. After the Debtors filed their chapter 11 petitions, the judge in the District Court Case asked the KC Parties and the two individual co-defendants, Mr. Houston and Mr. Cook (collectively, the "**Individual Defendants**")), to inform the courtroom deputy whether they supported or objected to the District Court Case being stayed against the Individual Defendants as well.

35. The Individual Defendants agreed to a stay of the District Court Case.

36. On October 8, 2021, the KC Parties filed on the District Court Case docket a "Plaintiffs' Reply to 'Plea of Stay' And Bankruptcy Filing by Corporate Defendants" (the "**Post-Petition District Court Motion**"), wherein the KC Parties requested that the judge in the District Court Case unilaterally decide the automatic stay is inapplicable not only to the Individual Defendants but to the Debtors as well and allow the pre-petition District Court Case to proceed against the Extrusion Parties.

37. The District Court entered an order [Dist. Ct. Doc. 399] continuing the summary judgment deadline until six weeks after this Court decides issues raised in this adversary proceeding.

## CONTINUATION OF THE DISTRICT COURT CASE WILL BE DETRIMENTAL TO DEBTORS' ESTATES

38. This Court should enjoin the continued prosecution of the District Court Case because (i) continuation of the District Court Case threatens to harm the Debtors' estates and imperils their ability to reorganize, and (ii) resolution of the KC Parties' claims against the Individual Defendants in the District Court Case will have a preclusive effect against the Debtors.

39. First, continuation of the District Court Case threatens to harm the Debtors' estates and imperils their ability to reorganize. The Extrusion Parties have significant concerns with the prospect of this litigation going forward. The KC Parties seek to continue the District Court Case

7

and liquidate their claims in a forum other than where the Bankruptcy Cases are pending against the Individual Defendants *and* the Debtors.

40. The KC Parties' desire to continue the District Court Case separately from the Bankruptcy Cases appears to stem from a strategy to put maximum pressure on the Extrusion Parties and force them to continue to litigate pro se or to incur significant attorneys' fees by having to pay multiple sets of lawyers to litigate with the KC Parties in multiple forums, thereby draining them of resources so that they are unable to pay their attorneys to put up a fight.

41. Furthermore, continuing the District Court Case diverts Mr. Houston's and Mr. Cook's attention from the Debtors' reorganization efforts and their ongoing operations. It will inhibit the Individual Defendants from actively participating in and supervising the Debtors' bankruptcy estates to the extent necessary. Mr. Houston and Mr. Cook's efforts are critical to the operations of Debtors and their reorganization efforts. Proceeding with the litigation in the District Court Case will detract from the Debtors' operations and reorganizations.

42. Second, resolving the KC Parties' claims against the Individual Defendants in the District Court Case will have a preclusive and prejudicial impact on the Debtors. This is not a case where a lender has a liquidated claim and guarantor liability can be easily determined. Instead, the question of liability and damages is hotly contested, and it will be nearly impossible for the KC Parties to obtain a judgment against the Debtors' CEO and chief engineer without determining liability and liquidating their alleged damages against the Debtors as well. The KC Parties have made their intentions abundantly clear that they intend and desire to prosecute the District Court Case as to all the Extrusion Parties, not just the Individual Defendants.

43. Any determination in the District Court Case against the Individual Defendants would have prejudicial preclusive effects against the Debtors with respect to the KC Parties' claims

of patent infringement and misappropriation of trade secrets. The breach of contract claims against Mike Houston and Mike Cook, as stated in the Complaint and the Amended Complaint filed in the District Court Case, center around the alleged conduct of Mike Houston and Mike Cook in their capacities as principals and employees of the Debtors. Accordingly, any determination of liability on the breach of contract claims against Mike Houston and Mike Cook will necessarily imbue a finding of liability (i.e. infringement or misappropriation) against the Debtors.

44. The KC Parties' determination to prosecute the District Court Case is a bald-faced attempt to impute liability to the Debtors for the actions of their principals, Mike Houston and Mike Cook, without involving the Debtors. Accordingly, the KC Parties' claims against the Debtors and the Individual Defendants are inextricably intertwined. It is simply not possible for the instant litigation to proceed against the Mr. Houston and Mr. Cook but not against the Debtors.

## RELIEF REQUESTED

45. The Debtors seek a declaratory judgment pursuant to §§ 105 and 362 of the Bankruptcy Code to extend the automatic stay under §§ 362(a) to the Individual Defendants in the District Court Case, or in the alternative, to stay or enjoin the continuation of the District Court Case pursuant to § 105 of the Bankruptcy Code during the pendency of Debtors' chapter 11 cases.

## COUNT I:
## REQUEST FOR AN EXTENSION OF THE
## AUTOMATIC STAY TO THE NON-DEBTOR DEFENDANTS
## IN THE DISTRICT COURT CASE PURSUANT TO 11 U.S.C. §§ 362(a)

46. The Debtors restate and reallege paragraphs 1-45 of this Complaint as if fully set forth herein.

47. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition.

48. Subsection (a)(l) of § 362 provides for a broad stay of litigation and other actions,

9

judicial or otherwise, against the debtor that was or could have been commenced prior to the commencement of the bankruptcy case. *See* 11 U.S.C. § 362(a)(l)

49. Subsection (a)(2) and (a)(3) of § 362 also stay a wide range of actions that would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate. *See* 11 U.S.C. § 362(a)(2)(3).

50. Federal Rule of Bankruptcy Procedure 7001(7) provides that a debtor may initiate an adversary proceeding to obtain an *injunction* or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief. Fed. R. Bank. P. 7001(7).

51. The Extrusion Parties seek an order staying the continuation of the District Court Case until the effective date of a reorganization plan, pursuant to § 362(a) of the Bankruptcy Code.

52. Extension of the stay is necessary because continuation of the District Court Case against Mr. Houston and Mr. Cook, who are key to the restructuring efforts of the Debtors, will distract them from their primary responsibility of shepherding the Debtors through reorganization.

53. If the District Court Case is allowed to continue, the Debtors' prospects for confirming a restructuring plan will be impaired, thwarting the primary purpose of providing Debtors with a breathing spell from litigation pressures. Accordingly, the automatic stay should extend to Mr. Houston and Mr. Cook.

54. Additionally, continuation of this District Court Case by its nature requires litigating and determining liability, if any, of the Debtors. Any effort by KC Parties to limit the litigation to the prosecution of Mr. Houston and Mr. Cook will fail by their own assertion that Houston and Cook's liability is predicated on the Debtors alleged past and continuing patent infringement. [*See* Dist. Ct. Doc. 13, p. 8] Continuing the District Court Case without the involvement of the Debtors prejudices the Debtors by virtue of having filed these Bankruptcy

Cases.

55. Based on the foregoing, the Debtors seek a declaratory judgment extending the stay under § 362(a) of the Bankruptcy Code to the continuation of the District Court Case against Mr. Houston and Mr. Cook.

### COUNT II:
### REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION AGAINST THE CONTINUANCE OF THE DISTRICT COURT CASE DURING THE PENDENCY OF THE BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 105(a)

56. The Debtors restate and reallege paragraphs 1-55 of this Complaint as if fully set forth herein.

57. The Eleventh Circuit Court of Appeals has adopted the United States Supreme Court's standard that "a bankruptcy court can enjoin any civil action if the outcome could alter the debtor's rights, liabilities, options, or freedom of action or in any way impacts upon the handling and administration of the bankrupt estate." *Scharrer v. Schron (In re Fundamental Long Term Care, Inc.),* 873 F.3d 1325, 1336-37 (11th Cir. 2017) (citations omitted).

58. The District Court Case will alter the landscape of Debtors' reorganization efforts as Mr. Houston and Mr. Cook's time and attention will be taken away from their duties in managing and operating the debtors-in-possession. As the Chief Executive Officer, Mr. Houston will make the decisions regarding these Bankruptcy Cases. Mr. Houston has multiple duties to fulfill as the managing member and CEO of the Debtors from operating the businesses in accordance with the Bankruptcy Code, preparing the monthly operating reports, continuing the goodwill of Debtors with their customers and clients, and working with Debtors' attorneys in addressing issues within the Bankruptcy Cases. Additionally, Mr. Cook, as the chief engineer, represents the core driver of the Debtors' value centers, and thus any reorganization effort from the Debtors' will rely on Mr. Cook's focus on the operations of the Debtors during the pendency

11

of these Bankruptcy Cases. Accordingly, continuation of this District Court Case will negatively impact the Bankruptcy Cases' administration.

59. The Extrusion Parties seek a preliminary and permanent injunction enjoining the continued prosecution of the District Court Case against Mr. Houston and Mr. Cook under § 105(a) of the Bankruptcy Code until the effective date of a plan of reorganization.

60. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

61. Relief under § 105 of the Bankruptcy Code is particularly appropriate in a chapter 11 case when necessary to protect a debtor's ability to effectively confirm a restructuring plan and to preserve the property of the debtor's estate.

62. The Eleventh Circuit Court of Appeals sets out four requirements for the Court to issue a preliminary injunction under § 105 of the Bankruptcy Code: 1. substantial likelihood of success on the merits; 2. irreparable injury will be suffered without the injunction; 3. threatened injury to movant outweighs whatever damage the injunction may cause to the opposing party; and 4. that the injunction will not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V v. Consorcio Barr, SA. (Four Seasons Hotels and Resorts),* 320 F.3d 1205, 1210 (11th Cir. 2003).

63. There is a substantial likelihood that Debtors will be able to restructure successfully if the District Court Case against Mr. Houston and Mr. Cook is enjoined. Mr. Houston's and Mr. Cook's time and energy can be allocated to the reorganization efforts of the Debtors and the effective administration of their estates. The Debtors' businesses have been profitable to date but for the cost of the litigation with the KC Parties.

12

64. In fact, the Debtors expect a significate infusion of capital from a transaction with Aero Nonwovens, a start-up material business initiated by Mr. Houston, Mr. Cook, and the other principals of the Debtors. Aero Nonwovens has already received over $120 million in capital commitments from the state of Oklahoma, the city of Muskogee, the Port of Muskogee, Oklahoma, the county of Muskogee, the United States Department of Agriculture, and a number of private entities to build a large manufacturing plant which will house up to 8 "MultiForm" Nonwovens machines, which would be designed and built by the Debtors.

65. If the District Court Case against Mr. Houston and Mr. Cook is not enjoined, the Debtors will likely suffer additional harm and their restructuring efforts will be threatened, including:

(i) The risk that Mr. Houston and Mr. Cook are unable to fund any substantial contribution to the Debtors' estates;

(ii) The risk that continuation of the District Court Case will result in a judgment against Mr. Houston and Mr. Cook that has a negative impact on Debtors' businesses;

(iii) The risk that Debtors will be brought into the District Court Case directly and indirectly since the KC Parties' claims against Mr. Houston and Mr. Cook flow from the Debtors' alleged ongoing intellectual property infringements and Mr. Houston's and Mr. Cook's roles as owners and managers of the Debtors; and

(iv) The risk that Mr. Houston and Mr. Cook will endure further discovery and court or arbitration time that will distract them and thereby frustrate the Debtors' efforts to restructure.

66. The likelihood of irreparable injury to the Debtors in the absence of immediate injunctive relief far outweighs any harm to the KC Parties. The KC Parties will suffer little if any harm if they are enjoined until the effective date of the Debtors' plans. The harm, if any, that the KC Parties complain of is not irreparable and certainly not immediate. Furthermore, the KC Parties' claims, if any, will be included in the plans and, if they disagree with the plans' treatment of their claims, they have recourse within the Bankruptcy Court or in any adversary proceeding. While staying the District Court Case will not prejudice the KC Parties, the Debtors' injury of a failure to effectively reorganize will be irreparable and will harm all creditors in these cases.

67. The injunctive relief involves private parties and, as such, does not specifically affect public interest. The public interest may be served, however, by refraining from stifling competition in the market and compliance with the congressional purpose of providing a debtor time and space to reorganize without the need to address continuing litigation, directly or indirectly. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).

68. The injunctive relief sought by the Debtors is necessary and proper to allow the Debtors to restructure and to provide them with an unobstructed opportunity to get a plan of reorganization confirmed.

69. Because of the significant negative impact the continuance of the District Court Case will have on the Debtors' estates and the Debtors' reorganization efforts, this Court must enter a § 105(a) order enjoining any further activity in the District Court Case against Mr. Houston and Mr. Cook until the Debtors are able to reorganize.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Extrusion Parties request the following relief as to the KC Parties:

(a)     the entry of a declaratory judgment that the continuation of the District Court Case against Mr. Houston and Mr. Cook is stayed under § 362(a) of the Bankruptcy Code until the effective date of a plan of reorganization; and/or

(b)     in the alternative, the entry of an Order granting an injunction pursuant to § 105(a) of the Bankruptcy Code enjoining and prohibiting the continuation of the District Court Case against Mr. Houston and Mr. Cook until the effective date of a plan of reorganization; and/or

(c)     such other relief as this Court deems just and proper under the circumstances.

Dated: October 22, 2021   **ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Benjamin R. Keck*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
Taner N. Thurman, Ga. Bar No. 835238
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
tthurman@rlklawfirm.com
*Proposed Attorneys for Debtors*

*/s/ Micheal Houston*
Micheal Houston, *pro se*

*/s/ Michael Cook*
Michael Cook, *pro se*