**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| In Re:<br><br>**EXTRUSION GROUP, LLC, *et al.*,**[1]<br><br>Debtors. | CASE NO. 21-21053-JRS<br><br>CHAPTER 11<br><br>Jointly Administered |
| **EXTRUSION GROUP, LLC;**<br>**EXTRUSION GROUP SERVICES, LLC;**<br>**EG GLOBAL, LLC; EG VENTURES,**<br>**LLC; MICHEAL HOUSTON; and**<br>**MICHAEL COOK,**<br><br>Plaintiffs,<br><br>v.<br><br>**KIMBERLY-CLARK CORPORATION;**<br>**and KIMBERLY-CLARK GLOBAL**<br>**SALES, LLC,**<br><br>Defendants. | **ADVERSARY PROCEEDING**<br>**NO. 21-02038** |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION ENJOINING CERTAIN LITIGATION**
**AND INCORPORATED BRIEF IN SUPPORT THEREOF**

Debtors Extrusion Group, LLC; Extrusion Group Services, LLC; EG Global, LLC; EG Ventures, LLC (collectively, the "**Debtors**"); Micheal Houston; and Michael Cook (collectively with the Debtors, the "**Extrusion Parties**") file this motion for entry of a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65, as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7065, and 11

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Extrusion Group, LLC (9996), EG Global, LLC (0194), Extrusion Group Services, LLC (2698), and EG Ventures, LLC (N/A).

U.S.C. §§ 362(a) and 105(a) against Defendants Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (collectively, "**Kimberly-Clark**") to temporarily restrain and enjoin its prosecution of the pending action styled *Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC v. Extrusion Group, LLC; Extrusion Group Services, LLC; EG Global, LLC; EG Ventures, LLC; Micheal Houston; and Michael Cook*, Case No. 1:18-cv-04754-SDG, pending in the U.S. District Court for the Northern District of Georgia (the "**District Court Case**") against the Debtors and their Chief Executive Officer, Micheal Houston, and Chief Engineer, Michael Cook, showing the Court as follows:

### INTRODUCTION

1. Competition is the bedrock of a capitalist, free-market economy. If massive corporations can use the legal system to crush entrepreneurs seeking to compete, the end result will be not only the destruction of competition and entrepreneurship, but perhaps the implosion of the capitalist system itself, as monopolies take over everything, capital is concentrated in fewer and fewer hands, and eventually the masses rise up in revolution, as we've seen in other countries around the world.  If America is to remain a free-market capitalist nation, its courts must protect those seeking to fairly compete and not become tools of those who seek to crush all competition.

2. The legal bills that the Debtors have been forced to incur as a result of the District Court Case have been absolutely staggering—over ***$7 million*** in fees, and the District Court Case has not even reached the summary judgment stage! That is no accident. With virtually unlimited funds to pay its lawyers, Kimberly-Clark knows that all it needs to do is to make the District Court Case so complicated, drawn-out, and expensive that sooner or later the litigation costs alone would drive the Debtors into bankruptcy. And here we are.

3. Axiomatic military strategy dictates that when the enemy retreats, you should not give them an opportunity to regroup. So it is hard to blame Kimberly-Clark for seeking to kick its opponents while they are down, to keep its proverbial foot on the gas, its giant boot on the Debtors' throats. Because if it does not, the Debtors may actually have a chance—a chance to compete; a chance to win fair and square. That is not a risk Kimberly-Clark wants to take.

4. Yet this is the very reason that bankruptcy courts exist: to give people a chance. And so that is why the Debtors are here—for the very breathing spell and opportunity to regroup, restructure, and reorganize that lie at the heart of Chapter 11 itself.

5. But of course Kimberly-Clark does not want that to happen. So eager was it to strike the finishing blow, less than 72 hours after the bankruptcy filing, Kimberly-Clark had already filed a pleading in the District Court seeking to press forward, attaching a copy to its notice of appearance in this case (which Debtors' counsel actually read and realized what it had filed, luckily). Kimberly-Clark couldn't even wait until its second docket filing here.

6. Think about what Kimberly-Clark wants to see happen. Knowing full-well the complexity and extreme expense of hiring lawyers and experts to defend against its litigation, it wants to be able to proceed against a couple of *pro se* individuals who definitely cannot afford to defend themselves. Odds are that would mean a win by default. Only Kimberly-Clark knows if driving these men into personal bankruptcy would make it happy, but one thing is clear: it will show no mercy. The Debtors and their principals pray that this Court will be more merciful.

7. By this Motion, the Extrusion Parties are requesting a temporary respite from Kimberly-Clark's litigation blitzkrieg so that the Debtors may reorganize and so that the Extrusion Parties may ultimately proceed in the District Court Case with adequate representation.

8. Staying the District Court Litigation as to Mike Houston and Mike Cook is critical

-3-

because (i) Kimberly-Clark's claims against Mike Houston and Mike Cook are inextricably intertwined with its claims against the Debtors, and any findings and conclusions against them personally would operate as *res judicata* or issue preclusion with respect to the Debtors, and (ii) the Debtors' principals need to be focused right now on their reorganizations efforts, not litigating with Kimberly-Clark, which would serve as a massive distraction, take up all of their time, and make it impossible for the Debtors to achieve a successful outcome in these Chapter 11 cases.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 362 and 105 and Rules 7065 and 9014 of the Federal Rules of Bankruptcy Procedure. The Extrusion Parties consent to entry of a final order by this Court.

## BACKGROUND

10. The Debtors operate primarily as industrial machinery manufacturing and consulting companies. Based on their many years of engineering experience, the Debtors' principals, including Mike Houston and Mike Cook, have the knowledge and ability to design and oversee the manufacture of massive industrial machines that produce non-woven fabric and plastic materials used in products such as wet wipes, diapers, face masks, and more.

11. Mike Houston is the managing member, Chief Executive Officer, and Chairman of the Board for each of the Debtors. Mike Houston sets the vision, objectives, and goals for the Debtors. He is also the face to the customers for the equipment sales functions. He oversees accounting, purchasing, operations, and legal activities for all the Debtors. Additionally, Mike Houston is the person who is managing and directing these bankruptcy cases. He is responsible for Debtors' administrative duties. More importantly, he is the person who will formulate the Debtors'

reorganization plans and implement them. Without Mike Houston's involvement, the Debtors could not reorganize. His involvement is vital to the reorganization effort.

12. Mike Cook is the chief engineer for the Debtors. As the chief engineer, he oversees development and design of all the Debtors' proprietary technology. His design efforts enhance the Debtors' intellectual property estate, which is a primary driver of value for the Debtors. Without Mike Cook, the Debtors' most significant source of revenue would be severely impacted.

13. In October 2018, Kimberly-Clark filed the complaint against the Extrusion Parties that commenced the District Court Case, accusing them of trade secret misappropriation, patent infringement, and breach of their confidentiality agreements.

14. After filing the District Court Case, Kimberly-Clark quickly tried and failed to obtain early injunctive relief and shut down the Debtors' business operations. First Judge Thrash denied Kimberly-Clark's request for expedited discovery. [Dist. Ct. Doc. 43]. Then he denied Kimberly-Clark's request for a temporary restraining order (which necessitated a finding that there was no real threat of irreparable harm and/or Kimberly-Clark was unlikely to ultimately prevail on the merits). [Dist. Ct. Doc. 88].

15. After realizing its initial theories were meritless, Kimberly-Clark significantly revised its claims by filing a First Amended Complaint on November 20, 2019 [Dist. Ct. Doc. 184.] (the "**Amended Complaint**"). The Amended Complaint includes counts against the Extrusion Parties that are inextricably intertwined with one another, including the following:

- Count I – Trade Secret Misappropriation under DTSA (Against All Defendants);
- Count II – Trade Secret Misappropriation under DTSA (Against All Defendants);
- Amended Count III – Patent Infringement ('104 Patent) (Against Extrusion Group);
- Count IV – Breach of Contract (Against Former Employee Houston); and
- Count V – Breach of Contract (Against Former Employee Cook).

16. Notably, the crux of the Amended Complaint is Kimberly-Clark's allegations of purported misappropriation of trade secrets, which forms the basis of the first two counts against *all* of the Extrusion Parties, and the breach of contract counts are based on purported breaches of confidentiality agreements by disclosing the very trade secrets the Debtors are accused of using. There are no claims against Mike Houston and Mike Cook that can be determined separately from the claims against the Debtors.

17. After years of bankrolling the extensive litigation against Kimberly-Clark, the Debtors' cash reserves dwindled. Ultimately, the Debtors were forced to file voluntary petitions for Chapter 11 bankruptcy relief on October 5, 2021 (the "**Petition Date**").

18. Shortly afterward, the district court asked Kimberly-Clark and the two individual co-defendants, Mike Houston and Mike Cook, to inform the courtroom deputy whether they supported or objected to the District Court Case being stayed against Mike Houston and Mike Cook as well as the Debtors. Mike Houston and Mike Cook emailed chambers and agreed to a stay of the District Court Case.

19. On October 8, 2021, Kimberly-Clark filed on the District Court Case docket a "Plaintiffs' Reply to 'Plea of Stay' And Bankruptcy Filing by Corporate Defendants" (the "**Post-Petition District Court Motion**"), wherein Kimberly-Clark requested that the judge in the District Court Case unilaterally decide the automatic stay is inapplicable not only to Mike Houston and Mike Cook but to the Debtors as well.  Kimberly-Clark did not serve a copy of the Post-Petition District Court Motion on Debtors' counsel and did not give the Debtors an opportunity to be heard.

20. The District Court entered an order on the Post-Petition District Court Motion determining that the automatic stay does prohibit further litigation of claims against the Debtors [Dist. Ct. Doc. 396] (the "**District Court Stay Order**").  The District Court did not preclude a

-6-

finding that the automatic stay *could* extend to Mike Houston and Mike Cook, observing matter-of-factly that the Debtors' bankruptcy filing does not operate to *automatically* stay the District Court case as to the individuals. *Id.* The District Court made no findings or conclusions regarding whether the automatic stay *should* be extended to Mike Houston and Mike Cook, and instead expressed openness to the possibility of staying the entire case.

21. On a joint motion of the parties, the District Court entered an order extending the imminent summary judgment deadline (previously November 1, 2021) until six weeks after this Court rules on this Motion and any motion by Kimberly-Clark for relief from the automatic stay. [Dist. Ct. Doc. 399].

### RELIEF REQUESTED AND BASIS FOR RELIEF

22. This Court should enjoin the continued prosecution of the District Court Case against Mike Houston and Mike Cook because (i) resolution of Kimberly-Clark's claims against Mike Houston and Mike Cook in the District Court Case would have a preclusive effect against the Debtors, essentially operating as a judgment against the Debtors, and (ii) continuation of the District Court Case threatens to harm the Debtors' estates and imperils their ability to reorganize.

23. The linchpin of the Bankruptcy Code is the automatic stay embodied in 11 U.S.C. § 362, which upon filing of a voluntary petition for relief, "operates as a stay, applicable to all entities" of, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1).

24. Although 362(a) by its terms only automatically stays actions against the debtor who has filed for bankruptcy protection, section 105(a) of the Bankruptcy Code gives courts broad powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); s*ee United States v. Energy Resources Co.*, 495 U.S. 545, 549-51 (1990) (noting that § 105 confers broad power on the bankruptcy courts).

-7-

25. Here, staying the District Court Case in its entirety is necessary to carry out the provisions of Chapter 11 of the Bankruptcy Code, because without a stay of the entire District Court Case, reorganization under Chapter 11 will be virtually impossible, and the Debtors would be severely prejudiced by any order or judgment entered against its principals.

26. Under certain circumstances, Section 105(a) grants bankruptcy courts broad equitable and injunctive powers to restrain a creditor's legal action against related non-debtors. *GMI Group, Inc. v. Unique Funding Solutions, LLC* (*In re GMI Group, Inc*.), 598 B.R. 685, 686 (Bankr. N.D. Ga. 2019) (Baisier, J.). Courts have found it appropriate to enjoin creditors from litigation and collection activities against a debtor-related parties where (i) the non-debtor's funds or credit are key to the debtor's reorganization,[2] (ii) a finding of liability against the non-debtor would effectively be imputed to the debtor because the issues are inextricably interwoven with common questions of law and fact, and/or (ii) the non-debtor's time and energy are necessary for the debtor's reorganization and the action threatens to disrupt the debtor's operations and diminish the debtor's ability to formulate a plan. *Id*. at 687 (citations and punctuation omitted).

### The Action Against the Debtors' Principals
### Is Essentially an Action Against the Debtors Here

27. There is no possible way to separate out the claims against Mike Houston and Mike Cook from the claims against the Debtors. Any finding, conclusion, or judgment against Mike Houston or Mike Cook—who are proceeding *pro se* in the District Court Case because they cannot afford representation—will have a preclusive effect against the Debtors, making a stay of the entire District Court Case necessary to accomplish the policy goals underlying the Bankruptcy Code.

---

[2] Although the personal funds and credit of Mike Houston and Mike Cook are far short of what the Debtors need to reorganize, these individuals are instrumental in ***obtaining*** the funding that the Debtors need.

-8-

28. Courts across the country have recognized that litigation that would negatively impact debtors in bankruptcy should be stayed. *See, e.g., In re Fiddler's Creek, LLC*, Nos. 9:10-bk-03846-ALP, 9:10-bk-03846-ALP), 2010 Bankr. LEXIS 5715, at *26 (Bankr. M.D. Fla. Sep. 15, 2010) ("[T]he . . . Debtors in the present case cannot stand idly by while the Plaintiffs . . . seek a determination that . . . Debtors breached their contractual obligations . . . causing alleged damages of over $13 million."); *Am. Film Techs. v. Taritero* (*In re Am. Film Techs.*), 175 B.R. 847, 855 (Bankr. D. Del. 1994) (holding "because of the identity of subject matter, issues and parties involved, the California case squarely implicates [the Debtor's] indemnification obligations and exposes it to collateral estoppel prejudice if it does not participate in that case," therefore justifying "the invocation of Code § 105 to issue a preliminary injunction order staying . . . prosecution of the California case in order to make effective the automatic stay of Code § 362(a)"); *In re Lomas Fin. Corp.*, 117 B.R. 64, 67 (S.D.N.Y. 1990) ("[I]t is not possible for the debtor . . . to be a bystander to a suit which may have a $ 20 million issue preclusion effect against it in favor of a pre-petition creditor.").

29. With respect to the first and second counts of the Amended Complaint asserting misappropriation of trade secrets—which are asserted against ***all*** of the Extrusion Parties—it is impossible to imagine how those counts could be litigated against Mike Houston and Mike Cook while somehow avoiding litigating the ***exact same issues*** against the Debtors.

30. Similarly, with respect to Counts IV and V for purported breaches of Mike Houston's and Mike Cook's confidentiality agreements, in order to reach any conclusions on those counts, the district court would need to find that there were trade secrets that were misappropriated (which would be the basis of the purported breach). Any such findings would prejudice the Debtors' ability to defend themselves later because the district court would necessarily need to

make findings of misconduct and liability against the agents of the Debtors and perhaps even the Debtors themselves.

31. There are no separate actions or counts against Mike Houston or Mike Cook in the District Court Case that implicate them in anything other than actions taken in the scope of their capacities as principals and employees of the Debtors.[3]

32. In sum, all of the allegations and counts in the Amended Complaint with respect to Mike Houston and Mike Cook are inextricably intertwined with the allegations and counts against the Debtors, and permitting Kimberly-Clark to continue prosecuting the District Court Case in the Debtors' absence would deprive them of their ability to defend against Kimberly-Clark's assertions regarding misappropriation of trade secrets, which would be extremely prejudicial to the Debtors and defeat the whole purpose of the automatic stay.

### Forcing Mike Houston and Mike Cook to Litigate Will Imperil the Debtors' Reorganization

33. Allowing the District Court Case to continue will adversely affect the Debtors' ability to operate and reorganize and deprive them of the breathing room that is critical for a debtor to successfully reorganize in Chapter 11. "Breathing room—an opportunity to recoup its strength, evaluate its position and strike an accord with creditors" to achieve the primary goal of chapter 11 which is "the financial resuscitation of an ailing business." *Transit Mix Concrete Corp. v. Ind. Cement Corp.*, 99 B.R. 210, 215 (Bankr. S.D.N.Y. 1989).

34. Courts across the country recognize that if a debtor's principals or officers are forced to deal with ongoing litigation, the debtor is deprived of the breathing room necessary to reorganize. *See, e.g.*, *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 860 (6th Cir. 1992)

---

[3] Count III of the Amended Complaint for patent infringement is only asserted against the Debtors, so perhaps it could be possible to litigate against the Debtors and not their principals, but not the other way around.

("Proceeding with the Texas action will needlessly divert key employees from the debtor's reorganization effort . . . [and] will have adverse effects on [the Debtor] and negate the purpose of the automatic stay."); *A.H. Robins Co., Inc. v. Piccinin* (*In re A.H. Robins Co., Inc.*), 788 F.2d 994, 996 (4th Cir. 1986) (recognizing that the stay should "provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor"); *Nelson v. Gen. Elec. Capital Corp.*, 140 B.R. 814, 817 (Bankr. M.D. Fla. 1992) ("It is abundantly clear that should [the principal] be required to continue to expend his individual energies and funds in defending these numerous lawsuits, his ability to contribute to the Debtor's reorganization will drastically diminish."); *In re Ionosphise Clubs, Inc.*, 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) (holding that lawsuit against a debtor's officer(s) may be enjoined if that lawsuit threatens to disrupt the debtor's operations); *TRS, Inc. v. Peterson Grain & Brokerage Co.* (*In re TRS, Inc.*), 76 B.R. 805, 809 (Bankr. D. Kan. 1987) (court enjoined lawsuit against debtor's president because of time and energy that would be taken from formulation of plan); *In re Kasual Kreation, Inc.*, 54 B.R. 915, 917 (Bankr. S.D. Fla. 1985) ("The prosecution of the Illinois action requires the [principals] to employ and pay out-of-state counsel and to spend a substantial amount of time and money defending this action at a time when their full attention, time and efforts are required in the reorganization of [the Debtor].")

35. Here, allowing Kimberly-Clark to continue going after Mike Houston and Mike Cook in the District Court Case ensures that Debtors will not have the necessary "breathing room" to successfully reorganize, as their CEO and Chief Engineer will be forced to spend most of their time and energy on defending themselves *pro se* in that lawsuit and will have insufficient time to focus on the Debtors' reorganization efforts. Their attention will be divided, with the bulk of their

efforts dedicated to their defense of the District Court Case—and for good reason—as a loss in that case would likely be the death knell for the Debtors.

36. The imminent November 1ˢᵗ deadline to file summary judgment motions was a key factor that in part prompted the filing of these bankruptcy cases, and if Mike Houston and Mike Cook must devote all of their efforts to a summary judgment battle against Kimberly-Clark's lawyers—whom they would have no choice but to take on *pro se*—there is no question that they would have little to no time left to focus on the Debtors' reorganization. If this Court were to deny this Motion, Mike Houston and Mike Cook would need to begin focusing on summary judgment motions almost immediately. Without the focus of their CEO and their Chief Engineer on business and reorganization efforts, the Debtors would likely be doomed, and their reorganization under Chapter 11 would have virtually no chance.

### The Court May Issue a Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. § 105

37. This Court's authority to grant this Motion is beyond dispute. Under binding Eleventh Circuit precedent, "a bankruptcy court can enjoin any civil action if the outcome could alter the debtor's rights, liabilities, options, or freedom of action or in any way impacts upon the handling and administration of the bankrupt estate." *Scharrer v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325, 1336–37 (11th Cir. 2017) (citations and punctuation omitted). The "overriding question, then, is whether the claims . . . could 'conceivably' affect the administration of the bankruptcy estate." *Id*. In other words, bankruptcy courts in the Eleventh Circuit have incredibly broad powers to enjoin "any civil action" that could "conceivably" impact a debtor in bankruptcy. Here, there can be little doubt that pushing forward with the District Court Case would have far more than just a "conceivable" impact on the Debtors.

38. The Court may issue an injunction under § 105 of the Bankruptcy Code when the following elements are present:

(1) a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize;

(2) a reasonable likelihood of a successful reorganization;

(3) the balance of equities tips in favor of the debtor as opposed to the creditor who would be restrained; and

(4) the public interest in successful bankruptcy reorganizations outweighs other competing societal interests.

*In re A & B Assocs., L.P.*, 2017 Bankr. LEXIS 3614, 2017 WL 4511354, at *3 (Bankr. S.D. Ga. Sept. 29, 2017) (*quoting In re Monroe Well Service, Inc.*, 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986)). Here, all four elements are satisfied, as explained below.

### A. The Debtors Would Suffer Imminent and Irreparable Harm If the District Court Case Were to Proceed.

39. The Debtors will be irreparably harmed if Kimberly-Clark is not temporarily restrained from prosecuting the District Court Case. Courts have recognized that a debtor will be irreparably harmed if the non-debtor action will consume the time, energy, and resources of the debtor's officers such that it would substantially hinder the debtor's reorganization effort. *E.g.*, *Sudbury, Inc. v. Escott*, 140 B.R. 461, 465 (Bankr. N.D. Ohio 1992).

40. Also, as discussed above, the preclusive effects of any findings or conclusions in the District Court Case would cause irreparable harm to the Debtors and make it difficult or impossible for them to defend themselves at a later date.

41. Consequently, should Kimberly-Clark be permitted to continue its prosecution of the District Court Case against Mike Houston and Mike Cook, the likelihood that imminent and irreparable harm will befall the Debtors is significant.

### B. A Successful Reorganization is Likely.

42. The second element that the Court should consider is the likelihood of success in the context of a Chapter 11 reorganization case and the debtor's ability to obtain confirmation of its plan of reorganization. *St. Petersburg Harbourview Hotel Corp. v. First Union Nat'l Bank* (*In re St. Petersburg Harbourview Hotel Corp.*), 168 B.R. 770, 773 (Bankr. M.D. Fla. 1994).

43. Except for the expense of the litigation in the District Court Case, the Debtors' businesses have been historically successful and very profitable. The Debtors have demonstrated that they have to ability to generate tens of millions of dollars in sales and millions of dollars in profits (which is what has enabled them to fend off Kimberly-Clark's assault to this point).

44. The Debtors' principals have received commitments for over $120 million in funding to open a manufacturing plant right here in America, which will create numerous jobs and boost the local economy. They are working diligently to obtain the additional necessary funding to get off the ground with what promises to be a highly profitable venture. Once the funding is in place, the new company will place an order with the Debtors for millions of dollars in machinery, which will enable the Debtors to reorganize. Once able to afford representation, the Debtors are confident there is a high likelihood that they will ultimately win the District Court Case.

### C. The Balance of Harms Favor Staying the District Court Case.

45. Any harm to Kimberly-Clark caused by staying the District Court Case is vastly outweighed by the catastrophic damage to the Debtors that would result if their principals were forced to focus on litigating *pro se* against Kimberly-Clark instead of reorganizing the Debtors. The likely outcome if the Court denies this Motion is that the Debtors will never have a chance in the District Court Case, and instead of justice being done and the party with the stronger case prevailing on the merits, the party with the deeper pockets will win by default because its

competitors cannot afford legal representation at the moment (though the Debtors anticipate being able to afford such representation in the near future).

46. Staying the District Court Case will not prejudice Kimberly-Clark (except to the extent that leveling the playing field and not handing it a victory based solely on its ability to outspend the competition could be considered prejudice), since its claims against the Debtors (which are inextricably intertwined with those against Mike Houston and Mike Cook) can be determined following the Debtors' reorganization. *See In re PTI Holding Corp.*, 346 B.R. 820, 833 (Bankr. D. Nev. 2006) ("injunction here protects the core process and allows it to function in the manner anticipated by Congress."). If Kimberly-Clark is actually correct, and it can ultimately actually win the District Court Case, it would be entitled to damages (and perhaps even an injunction) at that time. If there were actually an emergency, and if an immediate injunction was actually necessary, Judge Thrash would not have already denied that relief when Kimberly-Clark requested it in the District Court Case. The only "emergency" here is for Kimberly-Clark to hurry up and make sure the Debtors never have a chance to defend themselves properly.

47. All a temporary stay of the District Court Case would do is maintain the status quo while giving the Debtors the breathing room they so desperately need. When balancing harm to non-moving party, maintaining the status quo is consistent with the objectives of a preliminary injunction. *See Toledo Trust Co. v. Poole* (*In re Poole*), 15 B.R. 422, 433 (Bankr. N.D. Oh. 1981).

48. In sum, the risk of placing the Debtors' reorganization in immediate jeopardy far outweighs a temporary stay for Kimberly-Clark to wait until it can pursue its claims in the District Court Case again. *See, e.g., Nelson v. Gen. Elec. Capital Corp.*, 140 B.R. 814, 817 (Bankr. M.D. Fla. 1992) ("The Court is satisfied that the interest in preventing imminent and continuing injury to the Debtor if the . . . litigation is permitted to continue against [the guarantor] would far outweigh

the harm which might be visited on the [claimants] if they are temporarily prohibited to prosecute their suits . . . ."); *In re Kasual Kreation, Inc.*, 54 B.R. 915, 917 (Bankr. S.D. Fla. 1985) ("The Plaintiff is only requesting Injunctive Relief for the seasonal period and since the Defendant is only seeking an award of money damages from the United States District Court, there would be no substantial harm to the Defendant caused by this short delay in the prosecution of this litigation."); *In re N. Star Contracting Corp.*, 125 B.R. 368 (S.D.N.Y. 1991) (holding that preliminary injunction staying action against president of debtor was appropriate); *In re United Health Care Org.*, 210 B.R. 228 (S.D.N.Y. 1997) (holding that injunction of claims against debtor's non-debtor principals and officers was proper).

49. On the one hand, the harm to Kimberly-Clark is merely the delay in an ultimate determination of its claims. On the other hand, the injury to the Debtors would likely be the end of their reorganization efforts and their imminent and complete collapse. In sum, the choice is delay versus death. This balance weighs heavily in favor of extending the stay.

**D. The Public Interest Compels Granting a Stay**.

50. An injunction will serve the public interest by allowing the Debtors the opportunity intended by Congress to successfully reorganize under Chapter 11. The ability to reorganize serves "one of the most important public interests." *Saxby's Coffee Worldwide, LLC v. John Larson et al.* (*In re Saxby's Coffee Worldwide, LLC*), 440 B.R. 369, 383 (Bankr. E.D. Pa. 2009); *see also Nelson v. Gen. Elec. Capital Corp.*, 140 B.R. 814, 817 (Bankr. M.D. Fla. 1992) ("[T]his Court is satisfied that the public interest is better served by the Debtor's reorganization rather than by its possible liquidation should this Court refuse to issue an injunction.").

51. Continuing the District Court Case against Mike Houston and Mike Cook places the Debtors' reorganizations in immediate peril. Further, any rulings in the District Court Case

against Mike Houston and Mike Cook would likely result in a proxy determination of the Debtors' rights and obligations, which is the exact outcome that the automatic stay is designed to prevent.

52. Accordingly, enjoining the District Court Case will serve the public interest and promote the purpose of Chapter 11, which is to give debtors a chance to, survive, reorganize, and pay their creditors.

## CONCLUSION

WHEREFORE, the Extrusion Parties respectfully ask the Court to grant the Motion and order that the entire District Court Case be stayed until conclusion of these Chapter 11 Cases or until further order of the Court and for such other and further relief as is just and proper.

Dated: October 22, 2021

**ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Benjamin R. Keck*
William A. Rountree, Ga. Bar No. 616503
Benjamin R. Keck, Ga. Bar No. 943504
Taner N. Thurman, Ga. Bar No. 835238
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
tthurman@rlklawfirm.com
*Proposed Attorneys for the Debtors*

-and-

*/s/ Micheal Houston*
Micheal Houston, *pro se*

-and-

*/s/ Michael Cook*
Michael Cook, *pro se*

-17-